THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CESAR AGUAYO-MONTES,<br><br>             Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>             Respondent. | **MEMORANDUM DECISION AND ORDER DENYING AND DISMISSING § 2255 MOTION WITH PREJUDICE**<br><br><br>Case No. 4:23-cv-00045-DN<br>(Crim. No. 4:21-cr-00069-DN-1)<br><br>District Judge David Nuffer |

Movant Cesar Aguayo-Montes moves pursuant to 28 U.S.C. § 2255 to vacate his conviction and 37-month sentence after pleading guilty to possession of heroin with intent to distribute ("§ 2255 Motion").[1] Mr. Aguayo-Montes argues that his rights to due process and effective assistance of counsel were violated because he was not sufficiently informed and advised of his guilty plea's immigration consequences.[2] The government responded, arguing that the record of Mr. Aguayo-Montes's Criminal Case[3] demonstrates that he fully understood his plea and its consequences, and that his counsel properly advised him the conviction could result in his deportation.[4] Mr. Aguayo-Montes replied,[5] and oral argument was held on May 1, 2024.[6]

---

[1] Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. 2255 ("§ 2255 Motion"), docket no. 1, filed May 23, 2023.

[2] *Id*. at 5-8.

[3] *United States v. Aguayo-Montes et al.*, No. 4:21-cr-00069-DN-1 (D. Utah) ("Criminal Case").

[4] United States' Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Response"), docket no. 6, filed July 21, 2023.

[5] Reply in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Reply"), docket no. 12, filed Sept. 30, 2023.

[6] Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 16, filed May 1, 2024.

Because the record clearly demonstrates that Mr. Aguayo-Montes knowingly, intelligently, and voluntarily pleaded guilty with a full understanding of his plea and its direct consequences, his due process rights were not violated. And because the record also clearly demonstrates that counsel's performance was not objectively unreasonable in advising Mr. Aguayo-Montes that his plea could result in deportation, Mr. Aguayo-Montes's right to effective assistance of counsel was not violated. Therefore, Mr. Aguayo-Montes is not entitled to relief, an evidentiary hearing is unnecessary, and his § 2255 Motion[7] is DENIED and DISMISSED with prejudice.

However, because Mr. Aguayo-Montes's § 2255 Motion raises substantial legal questions that have not been authoritatively decided by the Tenth Circuit Court of Appeals, a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings is GRANTED.

**Contents**

FINDINGS OF FACT....................................................................................................... 3
    Mr. Aguayo-Montes's personal background ...................................................... 3
    Mr. Aguayo-Montes's offense conduct and charges ......................................... 3
    Mr. Aguayo-Montes's guilty plea and sentence ............................................... 4
    Mr. Aguayo-Montes's § 2255 Motion .............................................................. 7
DISCUSSION ................................................................................................................. 8
    Mr. Aguayo-Montes knowingly, intelligently, and voluntarily pleaded guilty ................ 9
    Mr. Aguayo-Montes was not denied effective assistance of counsel ............................. 15
    Mr. Aguayo-Montes is entitled to a certificate of appealability ...................................... 22
ORDER ........................................................................................................................... 22

---

[7] Docket no. 1, filed May 23, 2023.

## FINDINGS OF FACT

### Mr. Aguayo-Montes's personal background

1.      Mr. Aguayo-Montes came to the United States when he was two years old and has lived in the Denver, Colorado area since that time.[8]

2.      Prior to June 6, 2021, Mr. Aguayo-Montes had no criminal history.[9]

3.      Mr. Aguayo-Montes is a citizen of Mexico, but was granted temporary immigration status under the Deferred Action for Childhood Arrivals ("DACA") program.[10]

4.      Mr. Aguayo-Montes owned a home and an automobile in Colorado, and he was in a long-term relationship with Angelica Alonso-Rodriguez, the co-defendant in his Criminal Case.[11]

### Mr. Aguayo-Montes's offense conduct and charges

5.      On June 6, 2021, police officers in Washington City, Utah, arrested Mr. Aguayo-Montes and Ms. Alonso-Rodriguez after they were caught transporting 16.18 pounds of heroin from California on their way to Colorado.[12]

6.      On July 9, 2021, Mr. Aguayo-Montes was charged by complaint with possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[13]

---

[8] Presentence Investigation Report ("PSR") ¶ 40 at 7, docket no. 75 in Criminal Case, filed under seal Apr. 26, 2022.

[9] *Id*. ¶¶ 28-35 at 5-6.

[10] *Id*. ¶ 36 at 6

[11] *Id*. ¶¶ 40-41 at 7; Felony Information, docket no. 21 in Criminal Case, filed Aug. 2, 2021.

[12] PSR ¶¶ 7-8 at 3-4.

[13] Felony Complaint, docket no. 1 in Criminal Case, filed July 9, 2021.

7.      Mr. Aguayo-Montes was later charged by felony information with one count of possessing with intent to distribute a kilogram or more of heroin, in violation of 21 U.S.C. § 841(a)(1).[14]

8.      Mr. Aguayo-Montes retained Aric Cramer as defense counsel, who represented him through his plea and sentencing.[15]

**Mr. Aguayo-Montes's guilty plea and sentence**

9.      Mr. Aguayo-Montes pleaded guilty to the charge in the felony information on February 14, 2022.[16]

10.     In his plea agreement, Mr. Aguayo-Montes acknowledged that the maximum possible penalties for his offense included a "term of imprisonment of up to life" and a "mandatory term of imprisonment of 10 years."[17] Pursuant to FED. R. CRIM P. 11(c)(1)(C), however, the government and Mr. Aguayo-Montes stipulated to a 37-month term of imprisonment, followed by 60 months of supervised release, which Mr. Aguayo-Montes "agree[d] is a reasonable sentence."[18]

11.     Mr. Aguayo-Montes also acknowledged and agreed in his plea agreement that, as a consequence of his conviction, he "may be removed from the United States, denied citizenship, and denied admission to the United States in the future."[19]

---

[14] Felony Information.

[15] § 2255 Motion ¶ 10 at 3; Minute Entry for Proceedings Held Before Magistrate Judge Paul Kohler ("Change of Plea Hearing"), docket no. 65, filed Feb. 14, 2022; Minute Entry for Proceedings Held Before Judge David Nuffer ("Sentencing Hearing"), docket no. 76, filed May 6, 2022.

[16] Change of Plea Hearing; Statement by Defendant in Advance of Plea of Guilty and Plea Agreement Pursuant to FED. R. CRIM. P. 11(c)(1)(C) ("Plea Agreement"), docket no. 67 in Criminal Case, filed Feb. 14, 2021.

[17] Plea Agreement ¶ 2 at 1.

[18] *Id.* ¶ 12.b at 4.

[19] *Id.* ¶ 2.b. at 2.

12.     Mr. Aguayo-Montes further affirmed in the plea agreement that:

(a)     "[n]o one ha[d] made threats, promises, or representations to [him] that have caused [him] to plead guilty, other than the provisions set forth in [the plea] agreement;"

(b)     "[n]either [his] attorney nor the [government] ha[d] promised [him] that [he] would receive probation or any other form of leniency because of [his] plea[;]"

(c)     he had "discussed th[e] case and th[e] plea with [his] lawyer as much as much as [he] wish[ed], and [he] ha[d] no additional questions[;]"

(d)     he was "satisfied with [his] lawyer[;]"

(e)     his "decision to enter th[e] plea was made after full and careful thought; with the advice of counsel; and with a full understanding of [his] rights, the facts and circumstances of the case and the consequences of the plea[;]"

(f)     he had "no mental reservations concerning the plea[;]" and

(g)     he "agree[d] with the terms and all of the statements" in the plea agreement.[20]

13.     At his change of plea hearing, Mr. Aguayo-Montes confirmed that he is not a United States citizen and reiterated his "understand[ing] that pleading guilty could [affect his] ability to remain in or return to the United States."[21]

14.     Mr. Aguayo-Montes also confirmed at the change of plea hearing that he "had enough time to work with Mr. Cramer about [his] case," and that he was "satisfied with [Mr. Cramer's] representation."[22]

---

[20] *Id.* ¶¶ 3-9 at 6.

[21] Change of Plea Hearing Transcript at 6:7-12, docket no. 6-2, filed July 21, 2023.

[22] *Id.* at 6:21-7:1.

15.     After conducting a Rule 11 colloquy with Mr. Aguayo-Montes, Magistrate Judge Paul Kohler found that Mr. Aguayo-Montes "is competent and capable of entering an informed plea. He is aware of the nature of the charge and the consequences of [his] plea, that the plea has been knowing and voluntary, and the elements are met and supported by facts."[23]

16.     The U.S. Probation Office was ordered to prepare a Presentence Investigation Report ("PSR"), which indicated that Mr. Aguayo-Montes met the criteria set forth in 18 U.S.C. § 3553(f)(1)-(5) and calculated his guideline range of imprisonment to be 70 to 87 months.[24]

17.     The PSR also stated that "[a]ccording to Immigration and Customs Enforcement (ICE), [Mr. Aguayo-Monte's] conviction may subject [him] to deportation to Mexico[,]" and that "[i]f deported, [he] must not illegally reenter the United States." And "[i]f not deported from the United States," he "is to comply with all directives of immigration officials" and "is required to obtain a valid Work Authorization Card through U.S. Citizenship and Immigration Services."[25]

18.     Mr. Aguayo-Montes did not object to the portions of his PSR that discussed the immigration consequences of his conviction.[26]

19.     On May 6, 2022, Mr. Aguayo-Montes's Rule 11(c)(1)(C) plea agreement was accepted, and he was sentenced to the agreed-upon 37-month term of imprisonment.[27]

20.     At Mr. Aguayo-Montes's sentencing hearing, the information within the PSR was discussed; Mr. Aguayo-Montes and his counsel each discussed the possibility of his deportation

---

[23] *Id.* at 9:23-10:2.

[24] PSR ¶¶ 54-55 at 9.

[25] *Id*. ¶ 36 at 6, ¶¶ 80.5-80.7 at 12-13.

[26] Objection to the Presentence Investigation Report, docket no. 73, filed Apr. 11, 2022; Addendum to the Presentence Report, docket no. 75-1 in Criminal Case, filed under seal Apr. 26, 2022.

[27] Sentencing Hearing; Judgment in a Criminal Case ("Judgment") at 2, docket no. 77 in Criminal Case, filed May 9, 2022.

and that he hoped to stay in the United States; and the District Judge discussed the possible consequence of Mr. Aguayo-Montes being deported upon accepting the plea agreement. Mr. Aguayo-Montes did not request additional time to speak with his counsel, or seek to withdraw his guilty plea.[28]

21.      Judgment entered on May 9, 2022.[29]

22.      Mr. Aguayo-Montes did not file a direct appeal, and his judgment became final on May 23, 2022.[30]

<b>Mr. Aguayo-Montes's § 2255 Motion</b>

23.      One year after his sentencing, on May 23, 2023, Mr. Aguayo-Montes filed his § 2255 Motion.[31]

24.      In his § 2255 Motion, Mr. Aguayo-Montes asserts that he "recalls telling Mr. Cramer during their first visit that he was worried about being deported and that his most important concern was to remain in the United States."[32]

25.      Mr. Aguayo-Montes further asserts that, prior to pleading guilty, he met with Mr. Cramer to discuss the plea agreement. At that meeting, Mr. Aguayo-Montes and Mr. Cramer discussed the paragraph of the plea agreement that states: "I understand that if I am not a United States citizen, I may be removed from the United States, denied citizenship, and denied admission to the United States in the future."[33]

---

[28] Sentencing Hearing.

[29] Judgment.

[30] FED. R. APP. P. 4(b)(1)(A).

[31] § 2255 Motion.

[32] *Id.* ¶ 11 at 3.

[33] *Id.* ¶¶ 25-27 at 4; Plea Agreement ¶ 2.b at 2.

26.     Mr. Aguayo-Montes asserts that he "asked what [the paragraph] meant and reiterated his concern that he did not want to be deported." He further asserts that Mr. Cramer responded by telling him that "he was not an immigration attorney and could not tell him what would happen." Mr. Aguayo-Montes asserts that "Mr. Cramer also said that he didn't need to worry about that until he got to prison and that once he was in prison, he could contact an immigration lawyer."[34]

27.     Mr. Aguayo-Montes asserts that Mr. Cramer never advised him that his offense "would be classified as an aggravated felony," and that it would "result in his automatic deportation without the possibility of release while removal proceedings are pending."[35]

28.     Mr. Aguayo-Montes asserts that "[i]f he had known that a conviction under this statute would trigger automatic deportation, he would not have pleaded guilty."[36]

## DISCUSSION

Under 28 U.S.C. § 2255, a federal prisoner may seek to "vacate, set aside[,] or correct" the prisoner's sentence if it "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[37] For all motions brought under § 2255, an evidentiary hearing must be held, "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[38]

---

[34] *Id.* ¶¶ 28-30 at 5.

[35] *Id.* ¶¶ 31-32 at 5.

[36] *Id.* ¶ 33 at 5.

[37] 28 U.S.C. § 2255(a).

[38] *Id.* § 2255(b).

Mr. Aguayo-Montes argues that his constitutional rights to due process and effective assistance of counsel were violated in his Criminal Case because he was not sufficiently informed and advised of his guilty plea's immigration consequences.[39] However, the record in Mr. Aguayo-Montes's Criminal Case plainly contradicts his arguments. The briefing on Mr. Aguayo-Montes's § 2255 Motion, attached exhibits and evidence, and the record of the Criminal Case conclusively demonstrate that Mr. Aguayo-Montes cannot establish that his guilty plea was unknowing or involuntary, or that his counsel's performance was constitutionally deficient. Therefore, the merits of Mr. Aguayo-Montes's arguments may be addressed without an evidentiary hearing.

### Mr. Aguayo-Montes knowingly, intelligently, and voluntarily pleaded guilty

Mr. Aguayo-Montes argues that his due process rights were violated because his guilty plea was not knowing and voluntary.[40] Specifically, Mr. Aguayo-Montes argues he "was not fairly apprised of the consequences of pleading guilty" because he "did not know that pleading guilty would result in certain deportation."[41] The record of Mr. Aguayo-Montes's Criminal Case, however, conclusively demonstrates that his due process rights were not violated.

To be constitutionally valid, due process requires that a guilty plea must be knowing and intelligent.[42] "[F]or a plea to be *knowing and intelligent*, the defendant must have a full understanding of what the plea connotes and of its consequence."[43] "More particularly, a defendant knowingly and intelligently pleads guilty if [the defendant] understands [the] plea's

---

[39] § 2255 Motion at 5-8.

[40] *Id*. at 5-6.

[41] *Id*. at 6.

[42] *United States v. Dominguez*, 998 F.3d 1094, 1105 (10th Cir. 2021).

[43] *Id*. (internal quotations omitted; emphasis in original).

'direct consequences,' even if he does not also 'understand every collateral consequence of the plea.'"[44] "Historically, [the Tenth Circuit Court of Appeals] ha[s] deemed deportation a collateral consequence of a guilty plea and not a direct consequence."[45]

According to Mr. Aguayo-Montes, the Supreme Court's decision in *Padilla v. Kentucky*[46] caused a sea-change in the law that removed the distinction between "direct" and "collateral" consequences when deportation is at issue.[47] He argues that "[a]fter *Padilla*, it doesn't matter whether deportation consequences are deemed to be collateral or direct because they are in a class of their own that requires constitutional protection."[48] Therefore, Mr. Aguayo-Montes contends that "a defendant who is unaware of the deportation consequence of a criminal conviction does not enter a knowing and voluntary plea."[49]

The government, on the other hand, contends that *Padilla* declined to resolve whether immigration consequences were "collateral" or "direct," and "declined to analyze any due-process issues."[50] The government argues that because "the Tenth Circuit has not extended *Padilla* to the due-process context," the Tenth Circuit's pre-*Padilla* precedents "deem[ing] deportation a collateral consequence of a guilty plea and not a direct consequence" remain good law.[51] Therefore, it is the government's position that because Mr. Aguayo-Montes does not

---

[44] *Id.* (quoting *United States v. Hurlich*, 293 F.3d 1223, 1230-31 (10th Cir. 2002)).

[45] *United States v. Carrillo-Estrada*, 564 Fed. App'x 385, 387 (10th Cir. 2014) (citing *Broomes v. Ashcroft*, 358 F.3d 1251, 1256 (10th Cir. 2004), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)); *see also United States v. Donjuan*, 720 Fed. App'x. 486, 491 (10th Cir. 2018).

[46] 559 U.S. 356 (2010).

[47] Reply at 2-3.

[48] *Id.* at 2.

[49] *Id.* at 3.

[50] Response at 4.

[51] *Id.* at 3-4.

assert that he failed to understand any *direct* consequence of his guilty plea, he cannot establish that his guilty plea was unknowing, unintelligent, or involuntary.[52] The government is correct.

The Tenth Circuit has recognized that "[i]n *Padilla*, the Supreme Court held that a defense attorney can render ineffective assistance of counsel in violation of the Sixth Amendment by offering incorrect information to a defendant regarding the immigration consequences of a guilty plea."[53] But the Supreme Court "repeatedly stressed that its decision regarding the duties of *counsel* was based on the 'unique nature of deportation.'"[54] The Supreme Court "explicitly declined to resolve whether immigration consequences were collateral or direct, and declined to analyze any due-process issues."[55] Thus, the Tenth Circuit has "not extended *Padilla* to the due-process context,"[56] and has declined to "depart from [its] pre-*Padilla* precedent regarding these types of due process claims."[57]

Contrary to Mr. Aguayo-Montes's argument,[58] *Padilla* did not eradicate the direct-versus-collateral distinction that applies in the due process context. *Padilla* indicated only that the distinction was "ill-suited" to the Sixth Amendment effective assistance of counsel question before the Supreme Court.[59] This was because the Supreme Court had "never applied a

---

[52] *Id.* at 4.

[53] *Carrillo-Estrada*, 564 Fed. App'x. at 387.

[54] *United States v. Hollins*, 70 F.4th 1258, 1263 (9th Cir. 2023) (quoting *Padilla*, 559 U.S. at 365) (emphasis in original).

[55] *Carrillo-Estrada*, 564 Fed. App'x. at 387 (internal citations omitted).

[56] *Id.*

[57] *Donjuan*, 720 Fed. App'x. at 491.

[58] Reply at 2-3.

[59] *Padilla*, 559 U.S. at 357.

distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance [of counsel]' required under *Strickland [v. Washington]*."[60]

Additionally, in the years since deciding *Padilla*, the Supreme Court has made clear that *Padilla* "did not eschew the direct-collateral divide across the board."[61] *Padilla* determined only that because of "the special 'nature of deportation' . . . 'the collateral versus direct distinction was ill-suited' to dispose of Padilla's [Sixth Amendment] claim."[62] The Tenth Circuit has also upheld the due process direct/collateral consequences distinction post-*Padilla*.[63] And it has rejected efforts to extend *Padilla* to the due process context.[64] While the Tenth Circuit's explicit rejection of those efforts have come in unpublished decisions, they are persuasive. Therefore, *Padilla*'s holdings regarding Sixth Amendment effective assistance of counsel do not apply in the context of due process.

This conclusion is further reinforced by the decisions of several other Circuit Courts of Appeals, which have likewise concluded that "the *Padilla* Court's unwillingness to apply the direct/collateral distinction in the Sixth Amendment context does not demonstrate the [Supreme] Court's intention to do away with that distinction entirely in the Fifth Amendment [due process] context.[65] And there are good reasons for maintaining the distinction in the due process context. The Sixth Amendment imposes a higher burden on counsel to inform clients of the consequences

---

[60] *Id*. at 365 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

[61] *Chaidez v. United States*, 568 U.S. 342, 355 (2013).

[62] *Id*. (quoting *Padilla*, 559 U.S. at 357) (internal punctuation omitted).

[63] *Dominguez*, 998 F.3d at 1105.

[64] *Carrillo-Estrada*, 564 Fed. App'x. at 387; *Donjuan*, 720 Fed. App'x. at 491.

[65] *United States v. Youngs*, 687 F.3d 56, 62 (2d Cir. 2012); *see also Hollis*, 70 F.4th at 1264; *United States v. Nicholson*, 676 F.3d 376, 381-382, n.3 (4th Cir. 2012); *United States v. Rodriguez-Gonzales*, 543 Fed. App'x 532, 535 (6th Cir. 2013).

of entering a guilty plea than the Fifth Amendment's Due Process Clause imposes on courts.[66]

Moreover, since *Padilla*, FED. R. CRIM. P. 11 was amended to require the district court to state in

its plea colloquy that "if convicted, a defendant who is not a United States citizen may be

removed from the United States, denied citizenship, and denied admission to the United States in

the future."[67] The Advisory Committee Note to the amendment makes clear that the Rule

"mandates a generic warning, not specific advice concerning the defendant's individual

situation."[68] And as the Tenth Circuit has explained in the years following *Padilla* that Rule 11

"prescribes procedures designed to ensure that pleas are entered knowingly and voluntarily."[69]

Therefore, *Padilla*'s holding regarding counsel's duties under the Sixth Amendment has

not been imported into due process or Rule 11. And even if Mr. Aguayo-Montes's assertion—

that he was not advised his conviction would result in his automatic removal—is accepted as

true, it would not support that his guilty plea was unknowingly, unintelligently, or involuntarily

made. The record clearly demonstrates that Mr. Aguayo-Montes was fully aware that he could be

deported as a result of his guilty plea.

In his plea agreement, Mr. Aguayo-Montes expressly affirmed he understood that by

pleading guilty, he "may be removed from the United States, denied citizenship, and denied

admission to the United States in the future."[70] He also affirmed that he received no promise of

lenience; he had discussed the plea with his counsel as much as he wished, and had no additional

questions; and his decision to enter the plea was made after full and careful thought, with the

---

[66] *Youngs*, 687 F.3d at 62; *United States v. Rodriguez–Penton*, 547 Fed. App'x 738, 739-740 (6th Cir. 2013); *Graham v. Connor*, 490 U.S. 386, 395, (1989).

[67] FED. R. CRIM. P. 11(b)(1)(O).

[68] *Id.* 2013 Amend., Advisory Committee Note.

[69] *Dominguez*, 998 F.3d at 1105; *see also Padilla*, 559 U.S. at 391 n.1 (Scalia, J., dissenting).

[70] Plea Agreement ¶ 2.b. at 2.

advice of counsel, and with a full understanding of his rights and the consequences of the plea.[71] Mr. Aguayo-Montes further asserts in his § 2255 Motion that he specifically discussed the paragraph of his plea agreement regarding his potential removal from the United States with his counsel before entering the plea agreement.[72]

Mr. Aguayo-Montes's understandings and affirmations within the plea agreement were further confirmed during his change of plea hearing. He expressly confirmed that he understood his plea could affect his ability to remain in or return to the United States.[73] He also confirmed that he had enough time to work with his counsel about the case and was satisfied with his counsel's representation.[74] And Magistrate Judge Kohler determined that Mr. Aguayo-Montes knowingly, intelligently, and voluntarily entered the plea after conducting a colloquy that complied with Rule 11.[75]

Before Mr. Aguayo-Montes's sentencing, a PSR was prepared which expressly stated that his conviction may subject him to deportation to Mexico, and that if deported, he must not illegally reenter the United States.[76] Mr. Aguayo-Montes raised no objection to this portion of the PSR.[77] And at his sentencing hearing, the information within the PSR was discussed; Mr. Aguayo-Montes and his counsel each discussed the possibility of his deportation and that he hoped to stay in the United States; and the District Judge discussed the possible consequence of

---

[71] *Id*. ¶¶ 4-5, 7 at 9.

[72] § 2255 Motion ¶¶ 25-30 at 4-5.

[73] Change of Plea Hearing Transcript at 6:7-12.

[74] *Id.* at 6:21-7:1.

[75] *Id.* at 9:23-10:2.

[76] PSR ¶ 36 at 6, ¶¶ 80.5-80.7 at 12-13.

[77] Objection to the Presentence Investigation Report; Addendum to the Presentence Report.

Mr. Aguayo-Montes being deported upon accepting the plea agreement.[78] Yet Mr. Aguayo-Montes never requested additional time to speak with his counsel, nor sought to withdraw his guilty plea.[79]

The record belies any assertion or argument within Mr. Aguayo-Montes's § 2255 Motion that he was not sufficiently informed that by pleading guilty he may be deported. The record clearly demonstrates that Mr. Aguayo-Montes was sufficiently informed that deportation was a consequence of his guilty plea. The record also clearly demonstrates that Mr. Aguayo-Montes knowingly, intelligently, and voluntarily pleaded guilty with a full understanding of his plea, its direct consequences, and that he may be deported. Therefore, Mr. Aguayo-Montes's due process rights were not violated.

### Mr. Aguayo-Montes was not denied effective assistance of counsel

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."[80] To demonstrate that his counsel constitutionally ineffective, Mr. Aguayo-Montes must show (i) that his counsel's performance was deficient, *i.e.*, that the representation "fell below an objective standard of reasonableness" as measured by prevailing professional norms; and (ii) that he was prejudiced by counsel's deficient performance.[81] Mr. Aguayo-Montes fails to meet his burden on the *Strickland* test's first prong.

---

[78] Sentencing Hearing.

[79] *Id*.

[80] *Lafler v. Cooper*, 566 U.S. 156, 162-163 (2012) (internal quotations omitted).

[81] *Strickland*, 466 U.S. at 687-688.

Mr. Aguayo-Montes argues that Mr. Cramer "fell short of his constitutional duty when he failed to advise [him] of the 'clear' consequence of pleading guilty."[82] Mr. Aguayo-Montes is incorrect.

"[S]urmounting *Strickland*'s high bar is never an easy task."[83] "The *Strickland* standard is highly deferential to counsel, requiring courts to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[84] The Tenth Circuit recently explained, "[t]o show counsel's assistance was constitutionally deficient, the errors must be so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[85] A "fair assessment" of *Strickland*'s first prong "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[86]

According to Mr. Aguayo-Montes, Mr. Cramer's performance fell below an objective standard of reasonableness because he advised Mr. Aguayo-Montes only that he *might* be subject to removal based on his conviction, and not that his conviction would "automatically trigger[] mandatory deportation."[87] Mr. Aguayo-Montes argues that *Padilla* required Mr. Cramer to advise him that the conviction would make him deportable under 8 U.S.C. § 1227.[88]

---

[82] § 2255 Motion at 7.

[83] *Cortez-Lazcano v. Whitten*, 81 F.4th 1074, 1089 (10th Cir. 2023) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

[84] *Id*. (quoting *Strickland*, 466 U.S. at 689).

[85] *United States v. Kearn*, 90 F.4th 1301, 1306 (10th Cir. 2024) (internal quotations omitted).

[86] *Id*. (quoting *Strickland*, 466 U.S. at 689).

[87] § 2255 Motion at 7.

[88] Reply at 5.

The problem with Mr. Aguayo-Montes's argument is that it relies on a flawed premise, *i.e.*, that *Padilla* required Mr. Cramer to specifically advise that Mr. Aguayo-Montes faced mandatory deportation upon his conviction. By its terms, *Padilla* requires only "that counsel must inform [their] client whether [the] plea carries a *risk* of deportation."[89] *Padilla* stated in dicta that "when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear."[90] But *Padilla* did not indicate when a deportation consequence is "truly clear." And the focus of *Padilla* was counsel giving a defendant no advice or erroneous advice regarding the immigration consequences of a guilty plea and conviction.[91] *Padilla* stressed immigration law's "complex[ity]," and acknowledged a more "limited" duty for practitioners when "the deportation consequences of a particular plea are unclear or uncertain."[92] And in the years following *Padilla*, the Supreme Court has confirmed that the Sixth Amendment requires only that counsel "provide advice about the *risk* of deportation arising from a guilty plea."[93]

The Tenth Circuit Courts of Appeals has not addressed the specific question presented by Mr. Aguayo-Montes's § 2255 Motion, *i.e.*, whether counsel must advise their client facing a conviction for an aggravated felony that deportation is a certainty. Other Circuit Courts of Appeals are split on the issue. The Ninth Circuit, as Mr. Aguayo-Montes points out, has held an attorney's performance deficient for failing to advise a defendant who pleaded guilty to an aggravated felony that the "conviction rendered [the defendant's] removal virtually certain, or

---

[89] 559 U.S. at 374 (emphasis added); *see also id.* at 388 (Alito, J., concurring) ("[A]n alien defendant's Sixth Amendment right to counsel is satisfied if defense counsel advises the client that a conviction *may* have immigration consequences, that immigration law is a specialized field, that the attorney is not an immigration lawyer, and that the client should consult an immigration specialist if the client wants advice on that subject." (emphasis added)).

[90] *Id.* at 369.

[91] *Id.* at 359, 368-374.

[92] *Id.* at 369.

[93] *Chaidez*, 568 U.S. at 344 (emphasis added).

words to that effect."[94] The Ninth Circuit recognized that despite the existence of exceptions under immigration law that would allow the defendant to "theoretically avoid removal," counsel still had a duty to advise the defendant that "removal was virtually certain."[95] On the other hand, the government points to the Eighth Circuit, which has held that an attorney's advice that their client "may be deported" upon conviction for an aggravated felony "complied with the Supreme Court's decision in *Padilla*."[96] The Eighth Circuit reads *Padilla* as holding that "plea counsel's performance was deficient for failing to advise Padilla that his conviction would make him 'deportable' . . . not that deportation or removal was either mandatory or certain."[97] The Eighth Circuit also noted available exceptions to deportation under immigration law, and emphasized "[t]hese immigration law complexities should caution any criminal defense attorney not to advise a defendant considering whether to plead guilty that the result of a post-conviction, contested removal proceeding is clear and certain."[98]

The Eighth Circuit's analysis and rationale are persuasive. As several courts have recognized, "there are a number of situations in which non-citizen defendants who plead guilty to aggravated felonies"—like Mr. Aguayo-Montes—nevertheless "can avoid removal."[99] For example, "[a]n alien with a deportable conviction may still seek 'relief from removal'" by

---

[94] *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015); *see also United States v. Swaby*, 855 F.3d 233 (4th Cir. 2017) (holding that counsel was constitutionally ineffective for (i) failing to inform the defendant that conviction of an aggravated felony presented only a risk, but not a certainty, of deportation, and (ii) providing false assurances and erroneous advice based on the incorrect immigration law statute).

[95] *Rodriguez-Vega*, 797 F.3d at 786-787.

[96] *United States v. Ramirez-Jimenez*, 907 F.3d 1091, 1093-1094 (8th Cir. 2018); *see also Dat v. United States*, 983 F.3d 1045, 1048 (8th Cir. 2020) (holding that it was objectively reasonable for counsel to advise the defendant that he "could" face immigration ramifications that "could" result in deportation, and that counsel was not required to tell the defendant that his deportation was virtually certain).

[97] *Ramirez-Jimenez*, 907 F.3d at 1094.

[98] *Id*.

[99] *United States v. Roman*, No. 12-CR-00038-CMA-14, 2015 WL 12857313, *7 (D. Colo. Aug. 27, 2015).

showing they are eligible for "withholding of removal[] or relief under the Convention Against Torture."[100] Mr. Aguayo-Montes is correct that non-citizen defendants must overcome challenging hurdles to obtain such relief.[101] But this underscores immigration law's "complex" nature, which makes "deportation consequences . . . often unclear."[102] "[A]nd criminal defense attorneys do not know with certainty how an immigration judge will handle a case."[103] In light of these and other immigration law complexities, several courts have rejected ineffective assistance of counsel arguments—like Mr. Aguayo-Montes's—that read *Padilla* to require counsel to explain that deportation is a "certain" or "definite" result from a guilty plea, and not just a "possibility."[104]

Additionally, although the Tenth Circuit has not squarely addressed the issue in a published opinion, it has suggested elsewhere that a defendant is adequately apprised of the immigration consequences of their plea when the plea agreement cautions them that they "might" be removed if convicted.[105] In *United States v. Gomez–Alvarez*, the Tenth Circuit rejected a defendant's "claim that his counsel was ineffective in failing to advise him of the immigration consequences of pleading guilty."[106] The Tenth Circuit emphasized that the defendant "was repeatedly asked whether he had been informed of the consequences of pleading guilty" and he "consistently responded affirmatively."[107] The defendant also "responded

---

[100] *Dat*, 983 F.3d at 1048; *see also Solis v. Garland*, No. 22-9536, 2023 WL 3302871, *1-2 (10th Cir. May 8, 2023).

[101] Reply at 10.

[102] *Padilla*, 559 U.S. at 369, n.10.

[103] *Roman*, 2015 WL 12857313, *7.

[104] *Ramirez-Jimenez*, 907 F.3d at 1094; *Dat*, 983 F.3d at 1048-1049; *United States v. Urias-Marrufo*, 744 F.3d 361 (5th Cir. 2014) (Garza, J., concurring); *Roman*, 2015 WL 12857313, *7 (citing cases)); *Thauberger v. United States*, No. 314CR00111GNSCHL, 2019 WL 5692653, *4 (W.D. Ky. Nov. 4, 2019).

[105] *Carrillo–Estrada,* 564 Fed. Appx. at 387 n.2.

[106] 482 Fed. App'x 330, 335-336 (10th Cir. 2012).

[107] *Id.* at 335.

positively when asked if he understood that [his] plea of guilty may result in an order of deportation from the United States."[108] Because of this, and because the defendant had "been informed by his counsel that a guilty plea *could* result in deportation," the Tenth Circuit held his counsel did not render ineffective assistance under *Padilla*.[109]

*Gomez-Alvarez*'s reasoning and analysis are persuasive, particularly considering the Supreme Court's consistent emphasis on counsel's duty to advise about the "risk" of deportation.[110] Like the defendant in *Gomez-Alvarez*, Mr. Aguayo-Montes's assertions and arguments fall short of demonstrating that his counsel provided constitutionally deficient advice. Mr. Aguayo-Montes does not contend that Mr. Cramer failed to discuss with him the *possibility* that he would be deported after pleading guilty. He does not contend that Mr. Cramer's advice was inaccurate. And he does not contend that Mr. Cramer gave him a false assurance that he would not be deported as a result of his guilty plea and conviction. Mr. Aguayo-Montes asserts and argues only that Mr. Cramer's advice was insufficient.

But to the extent that Mr. Aguayo-Montes does attempt to assert and argue that Mr. Cramer gave incorrect advice or false assurances, these assertions and arguments are self-serving and contradicted by the clear record. Mr. Aguayo-Montes concedes that, prior to entering his guilty plea, he and Mr. Cramer specifically discussed the paragraph of the plea agreement relating to the possibility of his deportation.[111] That paragraph states: "I understand that, if I am not a United States citizen, I may be removed from the United States, denied citizenship, and

---

[108] *Id.* at 335-336.

[109] *Id.* at 336 (emphasis added).

[110] *Chaidez*, 568 U.S. at 344; *Padilla*, 559 U.S. at 374.

[111] § 2255 Motion ¶¶ 25-27 at 4.

denied admission to the United States in the future."[112] Beyond the possibility of deportation, Mr. Cramer advised Mr. Aguayo-Montes that he was not an immigration attorney and could not tell him with certainty what would happen if he pleaded guilty.[113] Mr. Cramer also advised Mr. Aguayo-Montes that he would need to contract an immigration attorney once in prison to address the deportation issue.[114] This advice was not incorrect and it did not falsely assure Mr. Aguayo-Montes that he would not be deported.

Mr. Aguayo-Montes affirmed in his plea agreement and at his change of plea hearing that he had sufficient time to speak with his counsel about the case, had no additional questions, and was satisfied with his counsel.[115] And like the defendant in *Gomez-Alvarez*, Mr. Aguayo-Montes affirmed in his plea agreement and "responded positively" at his change of plea hearing that he understood the terms and consequences of pleading guilty, including that he may be removed from the United States.[116]

On this record, given the "highly deferential" review applicable to Mr. Cramer's advice,[117] that Mr. Cramer discussed the risk of deportation with Mr. Aguayo-Montes, and did not give inaccurate advice or false assurances, Mr. Aguayo-Montes fails to meet his burden of demonstrating that Mr. Cramer's performance fell below an objective standard of reasonableness. Therefore, Mr. Aguayo-Montes's right to effective assistance of counsel was not violated.

---

[112] Plea Agreement ¶ 2.b at 2.

[113] § 2255 Motion ¶ 29 at 5.

[114] *Id*. ¶ 30 at 5.

[115] Plea Agreement ¶¶ 5-6 at 6; Change of Plea Hearing Transcript 6:21-7:1.

[116] Plea Agreement ¶ 2.b at 2, ¶ 7 at 6; Change of Plea Hearing Transcript at 6:7-12.

[117] *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009).

**Mr. Aguayo-Montes is entitled to a certificate of appealability**

Rule 11 of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."[118] "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)[,]"[119] which requires that "the applicant has made a substantial showing of the denial of a constitutional right."[120]

Because Mr. Aguayo-Montes's § 2255 Motion raises substantial legal questions that have not been authoritatively decided by the Tenth Circuit Court of Appeals, issuance of a certificate of appealability under Rule 11 is appropriate. Specifically, Mr. Aguayo-Montes is entitled to a certificate of appealability regarding: (1) whether his due process rights were violated because he was not informed that his guilty plea to an aggravated felony would result in certain deportation; and (2) whether his right to effective assistance of counsel was violated because he was not advised by counsel that his guilty plea to an aggravated felony would result in certain deportation.

**ORDER**

IT IS HEREBY ORDERED that Mr. Aguayo-Montes's § 2255 Motion[121] is DENIED and DISMISSED with prejudice.

IT IS FURTHER ORDERED that Mr. Aguayo-Montes is GRANTED a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings. Specifically, a certificate of appealability is issued as to: (1) whether his due process rights were violated

---

[118] R. Governing Sec. 2255 Proceedings 11(a).

[119] *Id*.

[120] 28 U.S.C. § 2253(c)(2).

[121] Docket no. 1, filed May 23, 2023.

because he was not informed that his guilty plea to an aggravated felony would result in certain

deportation; and (2) whether his right to effective assistance of counsel was violated because he

was not advised by counsel that his guilty plea to an aggravated felony would result in certain

deportation.

The Clerk is directed to close the case.

Signed May 22, 2024.

BY THE COURT

David Nuffer
United States Senior District Judge